FILED
DALLAS COUNTY
10/24/2018 7:47 PM
FELICIA PITRE
DISTRICT CLERK

NO. _____

DC-18-16111

Angie Avina

| | | |
|---|---|---|
| PACIFIC UNION FINANCIAL, LLC | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| JASON PERRY, | § | |
| | § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL VERIFIED PETITION FOR INJUNCTIVE RELIEF, DAMAGES AND APPLICATION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Pacific Union Financial, LLC ("Pacific Union" or "Company") files this its Original Petition for Injunctive Relief, Damages and Application for Temporary Restraining Order ("Original Petition") and in support of same respectfully shows:

### I. DISCOVERY DESIGNATION

1.      Pacific Union recommends that this case be designated Level 2 for the purposes of discovery under the Texas Rules of Civil Procedure, except as modified by Plaintiff's Motion for Expedited Discovery filed contemporaneously with the Original Petition. Pacific Union expressly reserves the right to move for a discovery control plan pursuant to Level 3.

### II. PARTIES

2.      Pacific Union is a California limited liability company doing business in Texas with its principal place of business in the County of Dallas, City of Irving, Texas.

3.      Defendant Jason Perry ("Perry") is an individual who, on information and belief, resides in Phenix City, Alabama. He may be served at 295 Lee Road 2194, Phenix City, Alabama 36870, or wherever else he may be found.



EXHIBIT A

141679660.6

### III.  JURISDICTION AND VENUE

4.      This Court has jurisdiction over this case because the amount in controversy is within the jurisdictional limits of the Court. The Court has personal jurisdiction over Perry because this action arises out of Perry's contact with Texas vis-à-vis his employment and contract with Pacific Union, a Texas-based employer. More, Perry expressly agreed to this Court's exercise of jurisdiction over him by agreeing to an exclusive venue provision setting venue in Dallas County.[1]

5.      Venue is proper in this Court under Section 15.002 of the Texas Civil Practice and Remedies Code as all or a substantial part of the events or omissions giving rise to the claims set forth herein occurred in Dallas County.  Further, venue is proper in this Court pursuant to a March 26, 2018 agreement between Pacific Union and Perry setting venue in Dallas County, Texas.

### IV.  FACTUAL ASSERTIONS

**A.**      **Pacific Union Employed Perry as a Wholesale Account Executive**

6.      Pacific Union is a nationwide mortgage lender headquartered in Irving, Texas. Pacific Union provides mortgage loans through wholesale, retail, and correspondent origination channels and maintains a mortgage servicing operation to service many of the loans it originates. Pacific Union is approved as a lender and servicer for Fannie Mae and Freddie Mac, an FHA lender and Ginnie Mae issuer and holds licenses in 50 states and the District of Columbia. Pacific Union employs over 1,000 employees who serve Pacific Union clients and partners from offices in several states.

7.      Pacific Union's specialties in the mortgage lending business include wholesale residential lending, correspondent lending, and loan servicing.

8.      Prior to October 11, 2018, Pacific Union employed Perry in the position of Wholesale Account Executive—Inside Sales. In this position, Perry was responsible for establishing

---

[1] *See Vak v. Net Matrix Solut's, Inc.*, 442 S.W.3d 553, 560–61 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding that agreement to exclusive venue provision also operates as consent to jurisdiction over nonresident).

and overseeing relationships with loan brokers. Loan brokers, in turn, source borrowers and market Pacific Union mortgages to those borrowers. In this way, loan brokers are customers of Pacific Union's business. Pacific Union has to attract and sell its mortgage services to loan brokers so that those loan brokers will sell Pacific Union's loans to borrowers.

**B.    Pacific Union Protects its Confidential Information and Gave Perry Access to That Information**

9.    Due to the nature of its business, Pacific Union prohibits the unauthorized disclosure, dissemination, reproduction, or sharing of its proprietary and confidential information. Not only is Pacific Union required by statute and regulations to maintain certain types of customer data as confidential, Pacific Union.  Pacific Union further seeks to protect its proprietary and confidential information because the unauthorized use and disclosure of such information could damage Pacific Union, undermine its competitive advantage and leave competitors with vital business, financial, or marketing information.

10.    While employed by Pacific Union, Perry had authorization to access the information related to certain loan brokers with whom he worked in addition to information about the company and its employees.

11.    Further, many of the materials accessible to Perry as a Pacific Union employee contained non-public commercial information, gathered at great time and expense by Pacific Union as part of its highly-competitive business. For instance, Pacific Union incentive and pricing information and broker contact lists are confidential because that information could be used by a competitor to offer greater incentives to specific brokers, who would then market the competitor's mortgages instead of Pacific Union's.

12.    To protect its confidential information, Pacific Union has implemented various policies and procedures that its employees are expected to follow. Among other measures, it requires

certain employees to execute employment agreements containing confidentiality obligations. On March 26, 2018, Perry executed a Duties and Compensation Agreement with Pacific Union ("Agreement"). A true and correct copy of that Agreement is attached as **Exhibit A-1**. Regarding confidentiality, it provides:

      C.      **Confidential Information**:

      I.      "Confidential Information"[2] means any forecasts, analyses, compilations, documents, records, data, client lists, computer disks or memories, or reports containing or otherwise reflecting information relating to Company or its business, its clients and their businesses and/or such services or products of Company (including without limitation, information pertaining to the capacity, design, capability, performance or usage of Company).

      II.      Confidential information includes all of the foregoing information whether or not it has been designated as confidential. All Confidential Information shall remain the sole and absolute property of Company, and Employee shall never at any time, including after termination or resignation from employment with Company, directly or indirectly use, such Confidential Information for any purpose, nor shall Employee disclose, disseminate, reproduce, share, or otherwise make available, in any manner whatsoever, such Confidential Information to any person or entity other than Company, without the prior written authorization of Company. Employee shall return to Company any property, records, documents, and other like materials which were supplied to Employee by Company and/or which Employee acquired in the course of his or her employment immediately upon termination or resignation from employment with Company.

Agreement, at ¶ 6(C).

      13.      Perry also agreed and acknowledged that upon termination of his employment with Pacific Union, he would "immediately surrender to Company all assets of Company including but not necessarily limited to: keys, pagers, charge cards, loan files, supplies, personnel files, financial statements, and any other work product and Confidential Information of Company." Agreement, at ¶ 6(B).

---

[2] Pacific Union adopts this definition of Confidential Information as used throughout this Petition.

14.     Pacific Union also maintains an Information Security Policy on its Company intranet that is accessible by all Pacific Union employees.   This Information Security Policy requires the following precautions to safeguard this information:

> Confidential Information may not be disclosed to anyone unless there is reason to believe that the recipient is authorized to receive that information, and has a business need to have access to this information. This disclosure includes to other employees of Pacific Union. Confidential information may not be disclosed to any person or entity outside Pacific Union except as necessary or appropriate (i) pursuant to prior written authorization by the person or entity to whom the information pertains (or the legally authorized representative of such person or entity); (ii) to process customers' transactions and administer Pacific Union's products and services including disclosures to vendors pursuant to an agreement to provide products or services to or for Pacific Union, provided the arrangement provides appropriate protections for Confidential Information and provided that the agreement has been approved by Pacific Union's legal counsel; (iii) as required by law or regulation; or (iv) pursuant to the direction of legal counsel.

A true and correct copy of the Information Security Policy is attached to the Complaint as **Exhibit A-2**.

15.     Pacific Union also employs a number of information security measures. For example, in order to access Pacific Union's electronic data, Pacific Union employees each use unique password-protected logins and are required to change those passwords every 90 days. External data transfers are monitored through a program called ShareFile, which encrypts files for transmission outside of the Pacific Union network. Access to Pacific Union's various programs and systems require their own individualized passwords and logins, which similarly require routine password changes. Pacific Union also employs an access management team that revokes credentials and locks employees out of Pacific Union's systems upon their termination from the Company. Pacific Union actively monitors systems to check for suspicious behavior based on reports and potential alerts generated by the software used by the Company.

C.    **Pacific Union Protects Its Relationships with Its Customers**

16.    Loan brokers are customers to Pacific Union because Pacific Union must attract brokers in order to access the borrowers that the brokers represent.

17.    Pacific Union protects its relationships with its customers by, among other things, obtaining agreements with the managers of those relationships that they will not use those relationships for anything other than the benefit of Pacific Union. Perry specifically agreed that he was prohibited "from soliciting Company's customers, [and] prospective customers [] for any reason other than Company's legitimate business purposes." Agreement, at ¶ 8. Perry also agreed that he had a duty to "do no act having a tendency to injure Company's business or financial interests." *Id.*

D.    **Perry Recently Absconded with Highly Sensitive Confidential Information**

18.    On September 14, 2018, Perry lied to his manager, Kimberly Torres, in order to obtain a nationwide listing of all Pacific Union's brokers (the "PacU Broker List"). Perry had to lie to Ms. Torres because he did not himself have access to the PacU Broker List as its dissemination was restricted to officer level managers. This list includes information related to more than three thousand loan brokers and, for each, shows the broker's name, the PacU account executive and account manager assigned to that broker, the pricing tier for that broker, and the status of PacU's relationship with that broker. The PacU Broker List is not limited to brokers with whom Perry had contact during his employment with Pacific Union. The PacU Broker List constitutes Pacific Union's confidential information because the data was compiled at great time and expense to Pacific Union. The PacU Broker List cannot be easily recreated by merely researching publicly available information due to the sheer quantity and distillation of active loan brokers throughout the country. And, of course, the information about Pacific Union's pricing and the status of the brokers' relationships with Pacific Union is not publicly known.

19.      On September 18, 2018, without authorization and in violation of Pacific Union's policies, Perry transmitted the PacU Broker List, which is Pacific Union confidential information, to his personal email address, "jperry10706@gmail.com."

20.      On October 5, 2018, without authorization and in violation of Pacific Union's policies, Perry transmitted an internal Pacific Union report titled "Wholesale Daily Activity Goal" for the period September 1 through September 27, 2018 to his personal email address jperry10706@gmail.com.  This non-public report contains data regarding the sales activity of each Account Executive in each Pacific Union region.

21.      On October 8, 2018, Perry sent an e-mail from his Pacific Union e-mail account to at least one of Pacific Union's clients, distributing a document containing loan product and rate information for one of Pacific Union's direct competitors, Stearns Lending, LLC ("Stearns"), and Perry's future employer.

22.      On October 10, 2018, Perry gave notice that he would be resigning from Pacific Union, effective the next day, October 11, 2018. On information and belief, Perry has received and accepted an offer from Stearns to perform the same role that he performed at Pacific Union, marketing Stearns' loan products to loan brokers. Pacific Union believes that he will begin working for Stearns imminently.

## V.  COUNT 1

INJUNCTIVE RELIEF AND DAMAGES – BREACH OF CONTRACT
(DUTIES AND COMPENSATION AGREEMENT)

23.      Pacific Union incorporates by reference each and every allegation in the preceding paragraphs of this Original Petition as set forth fully herein.

24.      In violation of the Agreement, Perry has taken without authorization and failed to return Pacific Union Confidential Information.  Unless Perry is restrained by this Court from his

intentional violation of his contractual obligations, Pacific Union will suffer substantial and irreparable injury. This irreparable injury includes the potential for disclosure or use of Pacific Union's Confidential Information, which includes a database of loan brokers that a competitor could use as a call list to divert business away from Pacific Union. Worse yet, the broker list has information about the status of Pacific Union's relationship with brokers, and the pricing structure applicable to incentivize each broker which would allow a competitor to design slightly improved compensation plans to divert the broker from Pacific Union. Further, having access to names of Pacific Union account executives and account managers would facilitate a competitor's recruiting of Pacific Union employees in whom it has invested resources to train and develop. Hiring a wholesale account executive frequently is a way to divert the business of a broker with which the account executive had a strong relationship. Disclosure, use, or destruction of such information would irreparably injure Pacific Union by undermining its competitive advantage and providing its competitors with business, financial, or marketing information that Pacific Union developed at significant cost and took reasonable steps to protect.

25.     Perry's intended use for this information can reasonably be inferred as one that is harmful to Pacific Union's interest. Now that Perry is no longer a Pacific Union employee, there is no other reasonable basis for his retention of Pacific Union information like the PacU Broker List, and no other reason why it would be useful to take.

26.     Pacific Union has no adequate remedy at law for such injuries. Pacific Union's damages, which could be substantial, are not presently ascertainable or readily subject to calculation. But, Pacific Union believes in good faith that such damages exceed the dollar threshold necessary to convey jurisdiction of this matter to the District Court.

27.     The threatened injury to Pacific Union outweighs any injury or legal right that might be asserted by Perry. Pacific Union has a substantial likelihood of success on the merits of this

action; thus, the issuance of a temporary injunction and permanent injunctive relief will not injure the public interest.

28.     Based on the foregoing, Pacific Union prays that a temporary restraining order, and temporary and permanent injunctions be issued ordering that Perry or his representatives, agents or designees be restrained from:

a.      Accessing, except as expressly authorized by this Court, any Pacific Union documents or data (whether in physical, electronic or digital form) presently within Perry's possession, custody or control, which contains or store Confidential Information;

b.      Using any Pacific Union Confidential Information for any purpose not expressly authorized by this Court; and

c.      Disclosing to any non-party any Pacific Union Confidential Information, except as expressly authorized by this Court.

And further ordering that Perry and his representatives, agents and designees:

a.      Within 2 days of the issuance of this Order, return to Pacific Union all information, documents, and tangible things in Perry's possession, custody, or control, whether in physical or digital format, including any and all copies thereof, that contain Pacific Union's Confidential Information;

b.      Immediately cease utilizing Pacific Union's Confidential Information, except as expressly authorized by this Court; and

c.      Not disclose any Pacific Union confidential and proprietary information to anyone, except as expressly authorized by this Court.

29.     Pacific Union also prays that it recover actual damages based on Perry's breach of his contractual duties to Pacific Union.  As indicated above, while these damages are not presently ascertainable, Pacific Union believes in good faith that its damages exceed the minimum threshold necessary to convey jurisdiction of this matter to the District Court.

## VI.    COUNT 2

<u>INJUNCTIVE RELIEF AND DAMAGES – MISAPPROPRIATION OF TRADE SECRETS
(TEXAS UNIFORM TRADE SECRETS ACT)</u>

30.     Pacific Union incorporates by reference each and every allegation in the preceding paragraphs of this Original Petition as set forth fully herein.

31.     The PacU Broker List contains information maintained as confidential by Pacific Union because such information is not generally known or readily ascertainable through proper means by persons including competitors of Pacific Union, who may obtain economic value from its use.  Pacific Union does not publicly disclose the brokers with whom it does business, nor the specific account executives associated with each.

32.     Pacific Union takes reasonable efforts to protect the secrecy of such confidential and proprietary information through physical security, employee policies and agreements and electronic and data security measures.  Such information qualifies as trade secrets under the Texas Uniform Trade Secrets Act (TUTSA), **§** 134A.002(6) (defining "trade secrets" to include "information, including a formula, pattern, compilation, program, device, method, technique, process, financial data, <u>or list of actual or potential customers or suppliers,</u> that: (A) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (B) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.") (emphasis added); *see also 360 Mortgage Group, LLC v. Homebridge Financial Services, Inc.*, 2016 WL 900577 (W.D. Tex. Mar. 2, 2016) (holding that mortgage lender raised a triable issue of trade secret misappropriation where the defendant presented "evidence that [defendant] emailed herself the Broker List shortly after her termination and before her company email access was terminated.").

33.     TUTSA specifically authorizes injunctive relief to remedy misappropriation and prevent the threatened misappropriation of trade secrets.

34.     Perry was given access to Pacific Union's trade secrets in the form of, among other things, the PacU Broker List.

35.     Perry obtained access to Pacific Union's trade secrets only after he entered into the Agreement, and only for the limited purposes allowed thereunder to utilize such trade secrets solely in connection with the performance of his employment duties on behalf of Pacific Union and not in competition with Pacific Union.

36.     Pacific Union's trade secrets are not commonly known by or available to the public or to Pacific Union's competitors. In addition, such information derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, others who can obtain economic value from its disclosure and use, including Pacific Union's competitors. Further, the trade secrets are the subject of Pacific Union's efforts that are reasonable under the circumstances to maintain their secrecy, including but not limited to restricting access to those with a need to know and by contractually requiring those persons with such access to maintain the confidentiality of the Trade Secrets and not to use the same except for the benefit of Pacific Union.

37.     Pacific Union disclosed the trade secrets to Perry in the context of a confidential relationship.

38.     Indeed, as a result of Perry's execution of the Agreement, and Pacific Union's policies restricting access and use of the trade secrets, Perry knew that he has a duty to maintain the secrecy of such information and to limit use thereof strictly for the benefit of Pacific Union.

39.     Upon information and belief, Perry misappropriated Pacific Union's trade secrets in order to use them for his own benefit, and without Pacific Union's consent, for the purpose of

promoting directly competing products and services offered by Stearns, Pacific Union's competitor, and/or recruiting Pacific Union employees. Perry's intended harmful use is further evidenced by the fact that Perry, while still employed by Pacific Union, used Pacific Union's e-mail systems to conduct marketing on behalf of Stearns.

40.    Perry obtained Pacific Union's trade secrets though improper means, using false pretenses as a means of gaining access to them.

41.    Pacific Union has suffered damage as a direct and proximate result of Perry's misappropriation of Pacific Union's trade secrets and is entitled to recovery of the same under TUTSA.

42.    Pacific Union is entitled to temporary and permanent injunctive relief to prevent Perry from continuing to possess Pacific Union's trade secrets as he is likely to wrongfully use or disclose Pacific Union's trade secrets.

43.    Perry's misappropriation of Pacific Union's trade secrets was willful and malicious, and as a result, Pacific Union is entitled to exemplary damages as provided by TUTSA.

44.    As a result of Perry's willful and malicious misappropriation of Pacific Union's trade secrets, Pacific Union is entitled to recovery of its attorneys' fees as provided by TUTSA.

## VII. COUNT 3

### ATTORNEYS' FEES

45.    Pacific Union incorporates by reference each and every allegation of the preceding paragraphs of this Original Petition as if fully set forth herein.

46.    Pacific Union has been forced to retain the undersigned attorneys in connection with this matter.  Pacific Union has agreed to pay the undersigned attorneys a reasonable fee for their services.  Pacific Union asks that this Court award Pacific Union its reasonable attorneys' fees and other

costs pursuant to Chapter 38 and Section 134A.005 of the Texas Civil Practice and Remedies Code, and

pursuant to its Agreement with Perry, *see* Agreement, at ¶ 12, along with any other applicable laws.

## VIII.  COUNT 4

### EXEMPLARY DAMAGES

47.      Pacific Union incorporates by reference each and every allegation of the preceding

paragraphs of this Original Petition as if fully set forth herein.

48.      Upon information and belief, Perry's conduct, as described above, was aggravated by

the kind of willfulness, wantonness and malice for which the law allows the imposition of exemplary

and punitive damages.  Moreover, Perry's conduct was accomplished through a breach of confidence

and trust and/or was committed knowingly and with conscious indifference to Pacific Union's property

rights.  Therefore, Pacific Union is entitled to recover exemplary and punitive damages from Perry.

## IX.  APPLICATION FOR TEMPORARY RESTRAINING ORDER

49.      Pacific Union incorporates by reference each and every allegation of the preceding

paragraphs of this Original Petition as if fully set forth herein.

50.      Pacific Union's confidential information and trade secrets constitute Plaintiff's

unique property rights. The total amount of future business that will be lost by Pacific Union if

Perry continues to use or disclose misappropriated information in breach of his contractual and

statutory obligations is to establish, if not impossible.

51.      Perry's actions as set forth in this Petition will irreparably damage Pacific Union, and

Pacific Union has no adequate remedy at law to prevent such damage unless this Court temporarily

restrains and then enjoins the Perry from using or disclosing Pacific Union's confidential

information until all matters in this controversy can be tried.

52.      The potential harm presented is imminent. Perry acted on behalf of Stearns before

his employment with Pacific Union ended by distributing Stearns marketing materials through using

Pacific Union's computer systems, and has stated that he intends to commence his formal employment with Stearns by October 29, 2018.

53.     Because the actions taken by Defendant have created a substantial risk of imminent and irreparable harm and injury to Plaintiff and that Plaintiff has a probable right of recovery against Defendant. Plaintiff's remedies at law are inadequate to protect it from this imminent and irreparable harm and injury. Therefore, Plaintiff is entitled to a temporary restraining order and, upon hearing and trial, a temporary and permanent injunction.

54.     In addition to the irreparable harm caused by loss of Plaintiff's confidential information represented in the PacU Broker List, the possibility of monetary damages is inadequate to fully compensate Plaintiff for the damage and harm caused to it.

55.     Plaintiff is further entitled to injunctive relief to restrain actual or threatened misappropriation of their Confidential Information and trade secrets. TEX. CIV. PRAC. & REM. CODE § 134A.003.

56.     To warrant injunctive relief, an applicant need not show that he will prevail; it need only show that a probable right on final trial to the relief he seeks. *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968). Here, it is probable Pacific Union will recover both legal and equitable remedies against Perry for violating his statutory and contractual duties to Pacific Union. Pacific Union has a probable right to recover based on Perry secretly taking the PacU Broker List, for his own interests, demonstrate the immediate harm that will be suffered by Pacific Union if Perry is not enjoined from using or disclosing the Confidential Information. Moreover, the disruption of Pacific Union's business and its loss of good will is an irreparable injury that cannot be adequately compensated in damages.

57.     Finally, Pacific Union is entitled to an injunction based upon Texas Civil Practices and Remedies Code Section 134A.003, which provides that misappropriation of confidential

information "may be enjoined." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex. 2002) (stating that applicant who has statutory right to an injunction is not required to prove it has no adequate remedy at law). Nevertheless, if the relief requested is not granted, Pacific Union will suffer further imminent harm and irreparable injury, and will have no adequate remedy at law, because, among other things:

58.     Perry's use or disclosure of Pacific Union's Confidential Information and goodwill will cause Pacific Union irreparable damage;

59.     Pacific Union has been and will continue to be damaged by Defendant's actions unless the requested injunctive relief is granted.

60.     Plaintiff respectfully requests that a Temporary Restraining Order be immediately issued as requested, that their Application for Temporary Injunction be set for hearing and that, after such hearing, a temporary injunction as requested be issued against Defendant, that this cause be set for trial on the merits and that, upon such trial, the temporary injunction become a permanent injunction as requested. Plaintiff requests the Court enter a Temporary Restraining Order, without notice, that restrains the Perry, and Perry's employees, representatives and agents, as set forth below.

## X.     MONETARY AND NON-MONETARY RELIEF

61.     Pacific Union states that, at this time, it seeks monetary relief of $100,000 or less and non-monetary relief. TEX. R. CIV. P. 47(c)(4).

## XI.  PRAYER

WHEREFORE, PREMISES CONSIDERED, Pacific Union prays that it be granted appropriate relief in this proceeding as follows:

1.     Grant a temporary restraining order, temporary injunction and permanent injunction ordering that Perry and his representatives, agents and designees be restrained from:

a.     Accessing, except as expressly authorized by this Court, any Pacific Union

documents or data (whether in physical, electronic or digital form) presently within Perry's possession, custody or control, which contains or store Confidential Information;[3]

       b.      Using any Pacific Union Confidential Information for any purpose not expressly authorized by this Court; and

       c.      Disclosing to any non-party any Pacific Union Confidential Information, except as expressly authorized by this Court.

And further ordering that Perry and his representatives, agents and designees:

       a.      Within 2 days of the issuance of this Order, return to Pacific Union all information, documents, and tangible things in Perry's possession, custody, or control, whether in physical or digital format, including any and all copies thereof, that contain Pacific Union's Confidential Information;

       b.      Immediately cease utilizing Pacific Union's Confidential Information, except as expressly authorized by this Court; and

       c.      Not disclose any Pacific Union confidential and proprietary information to anyone, except as expressly authorized by this Court.

2.      Perry be cited to appear and file answer herein.

3.      Pacific Union further prays that it be awarded recovery for its damages, as plead herein, against Perry and further prays that the Court award it attorney fees, exemplary damages, and any other relief, at law or in equity, to which it deems Pacific Union justly entitled.

---

[3] "Confidential Information," as used herein, nonpublic and proprietary information obtained by Perry by way of his employment with Pacific Union. Examples of Confidential Information includes forecasts, analyses, compilations, documents, records, data, client lists, computer disks or memories, or reports containing or otherwise reflecting information relating to Company or its business, its clients and their businesses and/or such services or products of Pacific Union (including without limitation, information pertaining to the capacity, design, capability, performance or usage of Pacific Union).

Dated:  October 24, 2018

Respectfully submitted,

*/s/ Ann Marie Painter*
Ann Marie Painter
Texas State Bar No. 00784715
Jason R. Elliott
Texas State Bar No. 24050558
Hayden M. Schottlaender
Texas State Bar No. 24098391

**PERKINS COIE LLP**
500 N. Akard, Suite 3300
Dallas, Texas  75201
T:  214.965.7700
F.  214.965-7765
ampainter@perkinscoie.com
jelliott@perkinscoie.com
hschottlaender@perkinscoie.com

ATTORNEYS FOR PLAINTIFF
PACIFIC UNION FINANCIAL, LLC

**Certification Pursuant to Dallas County Local Rule 2.02**

The undersigned attorney for Plaintiff hereby certifies that counsel for the Defendant, Robert R. Lomax, was provided with a copy of the foregoing Petition and proposed order on or before 10:15 p.m. on October 23, 2018.

The undersigned attorney for Plaintiff further certifies that, the best of his/her knowledge, the case in which this application is presented is not subject to transfer under Local Rule 1.06.

/s/ Ann Marie Painter
Ann Marie Painter

## VERIFICATION

THE STATE OF TEXAS     §
           §
COUNTY OF DALLAS     §

BEFORE ME, the undersigned authority, on this day personally appeared Brad Hoke who swore or affirmed to tell truth, and stated as follows:

"I am over the age of 21 and have not been convicted of a felony. I am authorized by Pacific Union Financial, LLC, in the above entitled and numbered cause, as a representative empowered to make this verification. I have read the foregoing Verified Petition. Based on my personal knowledge, and facts and information reasonably available to Pacific Union its business records and documents, including those that are included as exhibits hereto, or discussions with Pacific Union's employees, the factual allegations contained in Section IV of this Verified Petition are verified as true and correct."

FURTHER AFFIANT SAYETH NAUGHT.

_____
Brad Hoke

Subscribed and sworn to before me, the undersigned authority, on this 24 day of October, 2018

_____
Notary Public, State of Texas

> ELIZABETH MARIE REID
> Notary Public, State of Texas
> Comm. Expires 12-01-2020
> Notary ID 11601074

My Commission Expires:

12-01-2020

**EXHIBIT A**

NO. _____

| | | |
|---|---|---|
| PACIFIC UNION FINANCIAL, LLC | § | IN THE DISTRICT COURT OF |
| Plaintiff, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| JASON PERRY, | § | |
| Defendant. | § | _____ JUDICIAL DISTRICT |

## EXHIBIT A: DECLARATION OF BRAD HOKE

I, Brad Hoke, declare as follows:

1.     I am of sound mind, over the age of 21, have never been convicted of a felony, and am fully competent to make this Declaration based upon my personal knowledge of the facts below or a review of documents and business records available to Pacific Union Financial, LLC ("Pacific Union"). If called to testify to the statements contained in this Declaration, I could and would testify competently thereto.

2.     I am presently employed by Pacific Union as an Executive Vice President and am Pacific Union's Chief Human Resources Officer.

3.     To protect Pacific Union's confidential information and competitive business interests, Pacific Union requires many of its employees to execute employment agreements containing confidentiality and non-solicitation obligations, among other restrictive covenants. Former Pacific Union Jason Perry ("Perry") executed such an agreement with Pacific Union on March 26, 2018, which I personally countersigned. A true and correct copy of that agreement is attached as **Exhibit A-1.**

4.     Pacific Union also maintains an Information Security Policy on its Company intranet that is accessible by all Pacific Union employees. A true and correct copy of the Information Security Policy is attached hereto as **Exhibit A-2.**

5.      As an officer of Pacific Union, I am a custodian of records for Pacific Union and am familiar with the way its records are created and maintained by virtue of my duties and responsibilities. The documents attached hereto as **Exhibits A-1** and **A-2** are exact duplicates of original records of Pacific Union; it was the regular practice of Pacific Union to make and maintain these types of records at or near the time of each act, event, condition, opinion, or diagnosis set forth in the records; the records were made by, or from information transmitted by, persons with knowledge of the matters set forth; the records were kept in the course of regularly conducted business activity; and it is the regular practice of the business activity to make the records.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas County, State of Texas, on this 19th day of October 2018.

Brad Hoke

141674526.1

EXHIBIT A-1

# PacificUnionFinancial

We work hard to *make mortgage easy.*℠

March 26, 2018

**Pacific Union Financial, LLC**
8900 Freeport Parkway, Suite 150
Irving, Texas 75063
972-827-3600

## DUTIES AND COMPENSATION AGREEMENT
## WHOLESALE ACCOUNT EXECUTIVE – (INSIDE SALES)

The purpose of this letter is to formally set forth **Jason Perry's**, ("Employee") Duties, Compensation and other terms of employment as a Wholesale Account Executive (Inside Sales) of Pacific Union Financial, LLC ("Company"), effective **April 2, 2018.**

1.  **Duties.** Employee's duties as a Wholesale Account Executive (Inside Sales) shall be to develop for Company our wholesale business pursuant to the company's policies, procedures and guidelines. As a Wholesale Account Executive - Inside, Company will place a great deal of reliance upon Employee to develop business with those loan brokers that practice originating loans that are devoid of fraud and/or misrepresentations and who process loans in a manner which is consistent with Company's guidelines and procedures. As such, it is extremely important that Employee carefully evaluates any loan broker that Employee submits to Company for approval. Employee's evaluation should place particular emphasis upon determining, to the best of Employee's ability, that the loan origination practices of the broker meets the same standards as those possessed by the Company. Employee will report directly to Employee's Manager, who will work with Employee in establishing the periodic goals that Employee will be expected to meet. Failure to meet the goals established by Employee's manager or failure to perform the other duties outlined in Paragraph 1 may, in the sole discretion of Company, be grounds for Employee's immediate termination (see Paragraph 6).

2.  **Exclusive Employment.** Employee agrees that Company may prohibit any outside employment that directly competes with or otherwise conflicts with Company's essential business interests, including outside employment prohibited by the Federal Housing Administration (FHA) guidelines, such as outside employment in mortgage lending, real estate, or a related field. Further, Employee will immediately notify Company of any employment in violation of such guidelines and cease employment with Company immediately.

3.  **Business Relationships.** Employee attests that no contract or agreement exists that would prohibit or inhibit Employee's performance of required job functions with Company. Employee further attests that no discussions with Company occurred prior to Employee's start date with Company that could be considered a violation of any contract or agreement with a previous employer, and that Employee did not, and will not prospectively, participate in any activity, including the recruitment of any other Company employee that would violate any such contract or agreement. Company shall not involve Employee in any recruiting, or other, activities that may be considered a violation of any Employee obligations to a previous employer.

4.  **Compensation:**

    A.  **Base Pay.** Employee shall be paid on an hourly basis at a rate of $11.00 per hour, for each hour worked (paid biweekly and subject to required state and federal payroll withholdings).

    a.  **Non-Recoverable Draw.** Employee shall receive non-recoverable draw payments, which shall be paid according to the table below, (less applicable taxes and withholdings) and will be applied against commission dollars earned in the monthly commission period. The greater of commission dollars earned or non-recoverable draw payment will be paid on the 15th of the following month. Example: Non-recoverable draws paid for the January commission period will be applied to any commission dollars earned in the month of January and the greater of override dollars earned or non-recoverable draw payment will be paid on February 15th.

COPYRIGHT PACIFIC UNION FINANCIAL, LLC
PERRY, JASON 03.26.18

DocuSign Envelope ID: BBF3A94F-51E0-4E52-ADCB-AFC93DC57DDB

DocuSign Envelope ID: BBF3A94F-51E0-4E52-ADCB-AFC93DC57DDB

| Period | Non-Recoverable Draw | Pay Date |
|---|---|---|
| April 2018 | $22,000.00 | 05/15/2018 |
| May 2018 | $22,000.00 | 06/15/2018 |
| June 2018 | $20,000.00 | 07/13/2018 |
| July 2018 | $20,000.00 | 08/15/2018 |
| August 2018 | $18,000.00 | 09/14/2018 |
| September 2018 | $18,000.00 | 10/15/2018 |

Company reserves the right to reduce, alter, or revoke the non-recoverable draw if Employee is not meeting the minimum performance expectations mentioned above. If your employment voluntarily terminates within ninety (90) days of any non-recoverable draw payment, Employee expressly agrees that upon termination Employee must repay Company all non-recoverable draw monies that were previously paid to Employee.

**B.     Enhanced Commission Rate.** Employee shall be paid at the enhanced commission rates (bps) on the standard commission schedule as outlined below:

- Paid 1.5 times basis points (bps) on standard commission schedule for April – July 2018.
- Paid 1.25 times basis points (bps) on standard commission schedule for August – November 2018.

Standard compensation plan will apply for the month of December 2018 and beyond (see below).

**C.     Utilization of Customer Service Sales Assistant.** As an Account Executive utilizing a Customer Service Sales Assistant your commission will be reduced by $300 per package after the first loan funds with a new client.

**D.     Incentive Compensation.** Incentive compensation is paid monthly on the 15th (or earlier if the 15th is on a weekend or holiday) of the following month. Incentive compensation is based on monthly funded loan production of the Account Executive's assigned clients and in accordance with the following incentive tables (basis points = bps):

**Broker Production:**

| Funded Volume | Funded Units | Agency (bps) | Government Standard (bps) | Government Specialty (bps) | *Non-Agency (bps) |
|---|---|---|---|---|---|
| $0 - $1,000,00 | 0-4 | 0 | 0 | 0 | 0 |
| $1,000,001 - $3,000,000 | 5-13 | 9.0 | 16.0 | 25.0 | 9.0 |
| $3,000,001 - $7,000,000 | 14-32 | 10.0 | 18.0 | 30.0 | 9.0 |
| $7,000,001 - $10,000,000 | 33-45 | 12.0 | 20.0 | 30.0 | 9.0 |
| $10,000,0001+ | 46+ | 13.0 | 22.0 | 30.0 | 10.0 |

*Non-Agency includes series S, flex key, and jumbo products, up to a maximum payout of $750

**Submission to Fund Pull-Through Modifier:** Calculation = Total submissions that fund / Total submissions

- Pull-through less than 60.00% = **1 basis point reduction** to the incentive rate in the Broker Production table
- Broker submissions that fund using a 60 day look back with a rolling 90 day average that is updated each month
- Loans that are still active with no disposition will be removed from the performance measurement

**Non-Delegated Production:**

| Funded Volume | Funded Units | Agency (bps) | Government Standard (bps) | Government Specialty (bps) | *Non-Agency (bps) |
|---|---|---|---|---|---|
| $0 - $1,000,00 | 0-4 | 0 | 0 | 0 | 0 |
| $1,000,001 - $3,000,000 | 5-13 | 3.0 | 6.5 | 8.0 | 4.0 |
| $3,000,001 - $7,000,000 | 14-32 | 4.0 | 7.5 | 10.0 | 4.0 |
| $7,000,001 - $10,000,000 | 33-45 | 4.5 | 8.0 | 12.0 | 4.0 |
| $10,000,0001+ | 46+ | 5.0 | 9.0 | 12.0 | 4.5 |

COPYRIGHT PACIFIC UNION FINANCIAL, LLC
PERRY, JASON 03.26.18

DocuSign Envelope ID: BBF3A94F-51E0-4E52-ADCB-AFC93DC57DDB

Non-Agency includes series or nex-key, and jumbo products, up to a Maximum payout of 9/30

The aggregate production of both Broker and Non-Delegated production will determine the funded tier. Tiers are determined by the applicable funded volume or units, whichever is greater. All tiers are retroactive. Loans are classified into production types in accordance with Company product standards and may be subject to change at the Company's sole discretion.

Employee fully understands that Company's commission policy is subject to change from time-to-time at the sole discretion of Company. In the event that Company chooses to change its commission policy in the future, Employee will be notified of such change in writing prior to the effective date. Loan product mix/pricing is subject to change at any time and without notice. All compensation to Employee is paid as a W-2 wage earner and is subject to required state and federal payroll withholdings.

5.      **Other Benefits.** Employee is also entitled to receive all other benefits normally offered by Company to employees of Employee's rank, title and tenure, as more particularly defined in Company's employee handbook, which is subject to change from time-to-time at the sole discretion of Company.

6.      **Termination:**

A.      **At Will.** Employee's employment with Company is "at will." This means that Employee or Company may terminate Employee's employment at any time upon verbal or written notice, to the other party, without cause. In the event Employee terminates, Employee will be paid Employee's salary, if any, plus earned incentive compensation through the date of Employee's termination date, plus, if any, the minimum amount of accrued benefits that may be due Employee by law. Final incentive compensation payment will be paid in accordance with Company's current compensation policy for terminated employees. If employee is terminated for: (i) The breach of any obligation, duty (see Paragraph 1), or agreement under this Agreement; (ii) gross negligence in the performance of services to Company; (iii) any act of personal dishonesty, fraud, or breach of fiduciary duty or trust; (iv) the conviction or plea of guilty or nolo contendere with respect to theft, fraud, crime involving moral turpitude, or any other felony; (v) any act of personal conduct which creates potential liability to Company under the laws for discrimination, sexual or other harassment, or liabilities to other employees; or (vi) continued and repeated violations of specific written directions of a supervisor, Employee will be paid Employee's salary, if any, plus incentive compensation earned on any loans locked prior to termination date and funded within thirty (30) days of the termination date. Incentive compensation is deemed earned when the loan funds. Employee will also be paid the minimum amount of accrued benefits that may be due Employee by law.

B.      **Return of Company Property.** If Employee terminates Employee's employment with Company for any reason, or if the Company terminates Employee's employment "for" or "without" cause, Employee hereby agrees to immediately surrender to Company all assets of Company including but not necessarily limited to: keys, pagers, charge cards, loan files, supplies, personnel files, financial statements, and any other work product and Confidential Information of Company.

C.      **Confidential Information:**

I.      "Confidential Information" means any forecasts, analyses, compilations, documents, records, data, client lists, computer disks or memories, or reports containing or otherwise reflecting information relating to Company or its business, its clients and their businesses and/or such services or products of Company (including without limitation, information pertaining to the capacity, design, capability, performance or usage of Company).

II.     Confidential information includes all of the foregoing information whether or not it has been designated as confidential. All Confidential Information shall remain the sole and absolute property of Company, and Employee shall never at any time, including after termination or resignation from employment with Company, directly or indirectly use, such Confidential Information for any purpose, nor shall Employee disclose, disseminate, reproduce, share, or otherwise make available, in any manner whatsoever, such Confidential Information to any person or entity other than Company, without the prior written authorization of Company. Employee shall return to Company any property, records, documents, and other like materials which were supplied to Employee by Company and/or which Employee acquired in the course of his or her employment immediately upon termination or resignation from employment with Company.

COPYRIGHT PACIFIC UNION FINANCIAL, LLC
PERRY, JASON 03.26.18

DocuSign Envelope ID: BBF3A94F-51E0-4E52-ADCB-AFC93DC57DDB

7.    Non-Solicitation of Employees and Clients. Employee acknowledges that Company invests substantial time, money, and other resources to recruit, train, and retain talented individuals. Employee further acknowledges that Company's efforts in this regard promote the business goodwill of the company by fostering productive, long-term relationships between Company, its employees and clients. In exchange for Company's investments set forth herein and to protect Company's business goodwill, and where permitted by applicable law, Employee agrees that during his or her employment with Company and for a period of one (1) year following the termination of such employment for any reason, he or she shall not, either directly or indirectly, contact any employee or officer of Company with whom Employee worked directly or indirectly in the course of his or employment with Company for purpose of soliciting or including that employee or officer to leave his or her employment with Company. Further, Employee will not assist any other person or entity in such a solicitation. Employee further agrees that he or she will not discuss, by any means whatsoever, with any such employee or officer of Company the termination of such individual's employment with Company during the time period set forth above.

8.    **Duty of Loyalty to Company.** Employee acknowledges that, as an Employee of Company, Employee has a duty to do no act having a tendency to injure Company's business or financial interests. In exchange for the consideration set forth herein, Employee hereby contractually acknowledges and agrees that Employee will not violate this duty. Included within this provision, where permitted by applicable law, is a prohibition on Employee from soliciting Company's customers, prospective customers, and employees for any reason other than Company's legitimate business purposes.

9.    **Do Not Contact Policy.** Employee shall conduct business in a manner consistent with the policies and procedures as outline in Company's Do Not Contact Policy, sent with new hire paperwork.

10.    **Legal Compliance.** Each loan application, its supporting information and other documentation delivered to Company, including without limitation, consumer credit disclosure statements, credit and deposit verifications, appraisals and other disclosure statements, shall have been prepared in accordance with Company's policies, procedures, and requirements as set forth in Company's Policies and Procedures, and all information contained in each application and its supporting information and documentation shall be true and correct in all respects and Employee shall not have failed to disclose any fact which could be material to Company's approving or accepting a mortgage loan or which would make such information misleading. Employee shall comply with all applicable local, state and federal laws, (including the regulations adopted thereunder), usury limitations, and all requirements of and disclosures required to be made under the Federal Truth-in-Lending Law, Regulation Z promulgated thereunder, the Real Estate Settlement Procedures Act, the Equal Credit Opportunity Act, and any other applicable laws and regulations.

11.    **Indemnification.** As additional consideration for Company to enter into this Agreement, to the extent permissible under RESPA and/or HUD, Employee agrees to indemnify, defend and hold Company harmless from any liability or loss whatsoever arising out of any intentional act of Employee, in the performance of this Agreement, or arising out of any breach by Employee. Employee further agrees to indemnify, defend and hold Company harmless from any liability or loss whatsoever arising out of any violation by Employee, of any federal, state or local laws or regulations, including, without limitation, applicable state real estate laws, Federal and state disclosure laws, and the rules and regulations of any purchaser of loans from Company. Employee further agrees to indemnify, defend, and hold Company harmless from any liability or loss whatsoever arising out of any claims or litigation from Employees conduct, from loans originated by Employee, or otherwise arising out of Company's and Employee's employment relationship.

12.    **Legal Fees.** If either party to this Agreement finds it necessary to bring legal action against the other to enforce the terms of this Agreement, then, where permitted by applicable law, the prevailing party shall be entitled to reimbursement of their legal fees (in-house or outside counsel) and court costs, subject to the provisions of the Binding Arbitration Agreement between the Parties.

13.    **Governing Law:**

    A.    **Applicable to California Employees.** To the extent applicable by law, this Agreement shall be governed by the laws of the State of California without regard to choice of law provisions. Venue shall lie in the courts of Orange County, California. Any and all disputes arising from the construction, formation, interpretation of this Agreement or otherwise having any connection whatsoever to this Agreement shall be resolved in accordance with the Company's Mandatory Binding Arbitration Agreement.

    B.    **Applicable to Non-California Employees.** To the extent applicable by law, this Agreement shall be governed by the laws of the State of Texas without regard to choice of law provisions. Venue shall lie in the courts of Dallas County, Texas. Any and all disputes arising from the construction, formation, interpretation of this Agreement or otherwise having any connection whatsoever to this Agreement shall be resolved in accordance with the Company's

COPYRIGHT PACIFIC UNION FINANCIAL, LLC
PERRY, JASON 03.26.18

Mandatory Binding Arbitration Agreement.

**14.    Severability.** If any provision in this agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remaining provisions shall nevertheless continue in full force without being impaired or invalidated in any way.

**15.    Waiver.** The failure of Employee or Company to seek redress for violation of, or to insist upon the strict performance of any covenant or condition of this Agreement shall not prevent a subsequent act which would have originally constituted a violation from having all the force and effect of an original violation.

**16.    Total Agreement.** Employee hereby acknowledges that this is the total Agreement between Employee and Company. Further, except for the Binding Arbitration Agreement, this Agreement supersedes any written or oral agreement(s) that may have prior existed between Employee and the Company.

**17.    Counterparts.** This Agreement may be executed in any number of counterparts by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same Agreement.

If this compensation Agreement is not executed and returned to Company's Corporate Office in Irving, TX within five (5) days from the employee's start date above, then it shall be deemed null and void.

The terms of this letter are understood and agreed to:

*Jason Perry*                                         3/26/2018

**JASON PERRY**                                    **DATE SIGNED**

*Brad Hoke*

                                                            3/26/2018

**BRAD HOKE**                                      **DATE SIGNED**
**EVP, CHIEF HUMAN RESOURCES OFFICER**
**PACIFIC UNION FINANCIAL, LLC**

COPYRIGHT PACIFIC UNION FINANCIAL, LLC
PERRY, JASON 03.26.18

**EXHIBIT A-2**



**Internal Use Only – 09/05/2017**

# Information Security Policy

Corporate

Internal Only

09/05/2017

## Table of Contents

Information Security Policy ...................................................................................................1

Table of Contents.................................................................................................................1

Policy Statement..................................................................................................................3

Chief Technology Officer .....................................................................................................3

Chief Information Security Officer .......................................................................................3

Risk Assessment .................................................................................................................3

Annual Reporting .................................................................................................................4

Employees and Associates..................................................................................................4

Procedures Introduction and Overview................................................................................4

Applicability..........................................................................................................................5

Information Classification.....................................................................................................6

Additional Policies that support the Information Security Policy ..........................................7

    Acceptable Use of Technology Policy .............................................................................7

    Change management Policy.............................................................................................7

    Clean Desk Policy...........................................................................................................7

    Security Badge Policy .....................................................................................................7

    Business Continuity Plan ................................................................................................7

    Disaster Recovery Plan ..................................................................................................7

    Encryption Policy.............................................................................................................7

*This document is limited to current Pacific Union Financial policy and practice and should not be construed as legal advice, legal opinion, or any other advice on specific facts or circumstances. Such policy and practice is subject to change. The recipient should contact its legal counsel for legal advice. **For business and professional use only. Not for consumer distribution.** All loans subject to approval. Certain conditions and fees apply. Pacific Union Financial, LLC NMLS #2221. Equal Housing Opportunity.*

Mobile Device and Removable Media Policy ................................................................................. 7

Physical Security Policy ............................................................................................................... 7

User Access Management Policy ................................................................................................. 7

Incident Response ..................................................................................................................... 7

Cyber Security Policy .................................................................................................................. 7

IT Asset Management Policy ....................................................................................................... 7

IT Incident Management Policy .................................................................................................. 7

Password Protection Policy ........................................................................................................ 7

Privacy Breach Policy ................................................................................................................. 7

Record Retention Policy ............................................................................................................. 7

Employee Handbook .................................................................................................................. 7

Vendor Oversight Policy .............................................................................................................. 7

*This document is limited to current Pacific Union Financial policy and practice and should not be construed as legal advice, legal opinion, or any other advice on specific facts or circumstances. Such policy and practice is subject to change. The recipient should contact its legal counsel for legal advice. **For business and professional use only. Not for consumer distribution.** All loans subject to approval. Certain conditions and fees apply. Pacific Union Financial, LLC NMLS #2221. Equal Housing Opportunity.*

# Information Security Policy

Pacific Union Financial, LLC

## Policy Statement

The Executive Management Team of Pacific Union Financial, LLC (Pacific Union) believes that the security of Pacific Union's physical assets and facilities as well as our customer's information is an essential priority. The Executive Management Team will ensure that the commitment to security is constantly communicated by management through Pacific Union's policies, procedures and its training curriculum. The development, implementation, maintenance and training of Pacific Union's Information Security efforts will be guided by a periodic Risk Assessment of the enterprise information systems.

## Chief Technology Officer

The Chief Technology Officer (CTO) or the CTO's qualified designee is responsible for all aspects of Information Technology not limited to Infrastructure, Service Desk, Information Security, Quality Assurance, Systems testing, Application Development, Application Support and Information Management.

## Chief Information Security Officer

The Chief Information Security Officer (CISO) reports to the office of CTO and is responsible for assessing the risks associated with unauthorized disclosure or use of customer information and implementing procedures to minimize those risks to Pacific Union. The CISO has the responsibility for ensuring that Pacific Union's security policies and procedures are communicated to employees, and as relevant, to others providing products or services to or for Pacific Union including but not limited to third-party service providers, consultants, and vendors.

The CISO also has responsibility for developing and maintaining the Information Security Program as it relates to technology. This includes but is not limited to system development life cycle ('SDLC') methodologies, system change control, version control, email encryption, data center access, intrusion detection and other prudent measures designed to prevent unauthorized access to systems and data.

In addition, the CISO will:

- Work in conjunction with Risk, Legal and Compliance, regarding the dissemination of information on new and amended laws and regulations applying to privacy and the protection of consumer information;
- Coordinate the implementation of employee training programs related to information security for Pacific Union;
- Assist in the investigation and resolution of consumer privacy questions and complaints directed to Pacific Union;
- Coordinate and assist during regulatory examinations regarding Information Security.

## Risk Assessment

Risks that threaten the security, confidentiality and integrity of information possessed by Pacific Union exist both internally and externally, and can range from innocent employee or third-party vendor

*This document is limited to current Pacific Union Financial policy and practice and should not be construed as legal advice, legal opinion, or any other advice on specific facts or circumstances. Such policy and practice is subject to change. The recipient should contact its legal counsel for legal advice. **For business and professional use only. Not for consumer distribution.** All loans subject to approval. Certain conditions and fees apply. Pacific Union Financial, LLC NMLS #2221. Equal Housing Opportunity.*

mis-handling of information to purposeful intrusion by outside parties. Pacific Union is entrusted with non-public information related to consumers and residential mortgage borrowers, which typically encompasses electronic and paper collections of confidential information. In order to assess and minimize the risk associated with the potential loss of this information, Pacific Union shall conduct a periodic Risk Assessment of its information systems to further identify and assess the sources and types of risk specific to Pacific Union. Pacific Union will utilize the then current FFEIC Cybersecurity Risk Assessment Tool. The Risk Assessment will inform the design of the Information Security Policy and its supporting policies, shall allow for revision of controls to respond to technological developments and evolving threats, and shall be updated as reasonably necessary to address changes to Pacific Union's information systems.

## Annual Reporting

The CTO and the CISO shall provide an annual report to the Executive Management Team on the status of the security program. The report will discuss Pacific Union's compliance with all regulatory guidelines concerning information security, material matters addressing issues such as Risk Assessment determinations and control decisions; service provider arrangements; results of penetration testing; security breaches or violations and management's responses; training completion statistics, and recommendations for changes or additions to the security program. This annual report will be due on December 15 of each year. Any remediation to systems or policies adopted by the Executive Management Team will be completed prior to the calendar year end.

## Employees and Associates

All Company employees, as well as any others providing products and services to or for Pacific Union, including but not limited to consultants, temporary workers, and vendors, shall be required to take appropriate steps to protect Pacific Union's confidential information, data files, software programs, physical equipment and other information systems placed at their disposal. This includes any and all policies that may be in effect pertaining to security such as clean desk, Internet use, email use or visitor access policies. Any consultant, temporary employee, vendors, third-party servicers, or other entity that may be granted access to Pacific Union's data, applications or systems, must sign a non-disclosure agreement approved by in-house legal counsel. New employees will be required to satisfactorily complete the information security training module. All employees will be required to complete information security training annually.

## Procedures Introduction and Overview

The Pacific Union Financial Information Security Policy and Procedures was developed to provide for the protection of personnel, property, facilities, information and assets of Pacific Union. The principal objectives are to deter, detect and prevent losses, and to limit potential harm to consumers and customers of Pacific Union and to limit potential liability of Pacific Union arising from improper use of any company assets, including but not limited to data, applications, systems, and network. In addition, the manual seeks to provide guidelines for responses appropriate to various contingency situations.

*This document is limited to current Pacific Union Financial policy and practice and should not be construed as legal advice, legal opinion, or any other advice on specific facts or circumstances.  Such policy and practice is subject to change.  The recipient should contact its legal counsel for legal advice.  **For business and professional use only.  Not for consumer distribution.** All loans subject to approval.  Certain conditions and fees apply.  Pacific Union Financial, LLC NMLS #2221.  Equal Housing Opportunity.*

The policy complies with the requirements of the Gramm-Leach-Bliley Act Privacy Safeguards Rule, including 16 CFR 314. The policy also includes an Information Security Program that has as its objectives the following points:

- To ensure the security and confidentiality of customer information.
- To protect against any reasonably anticipated threats or hazards to the security or integrity of such information.
- To protect against unauthorized access to or use of such information or systems that could result in substantial harm or inconvenience to any customer.
- To protect against unauthorized access to physical equipment running Pacific Union's systems whether managed by Pacific Union or a third-party.
- To protect against any reputation or financial damage to Pacific Union.

## Applicability

The policy takes into account the nature of Pacific Union as a lender that offers services to customers through the Internet and its Call Center; however, the use of the branch offices, mail, and Loan Officers as customer interaction channels is also addressed. Each channel has its own particular level of risk that must be assessed, with actions taken to mitigate those risks.

The policy and procedures apply to the following:

- Employees of Pacific Union, contractors, temporary workers, and consultants performing services on behalf of Pacific Union.
- Any organization or individual with whom Pacific Union has a contract to provide products or services to or for Pacific Union.
- Information in all forms, including oral, written, image and electronic.
- Physical and logical (non-physical) protection, including protection of physical assets and premises.
- All modes of information processing including, but not limited to, manual methods, hardware and software networks, other devices and information disposal techniques.
- Information used by Pacific Union that originates outside of internal sources including, but not limited to, vendors, contractors, customers, regulators, other enterprises and the public domain.
- Pacific Union's information resources used by, shared by, or in the custody of others.

Technology is critical to the success of Pacific Union. Pacific Union's technology and services must permit access to the customer information necessary to permit Pacific Union to conduct business with its customers. At the same time, access must be appropriately safeguarded to preclude unauthorized access to, or use of, customer information, company assets, and or company premises. Our Executive Management Team has determined that the confidential information on Pacific Union's information technology systems as well as confidential information that is collected and stored in Pacific Union offices are of equal risk. The appropriate safeguards, as determined by the Risk Assessment, will be implemented to ensure that all information either stored electronically or in paper format is protected.

*This document is limited to current Pacific Union Financial policy and practice and should not be construed as legal advice, legal opinion, or any other advice on specific facts or circumstances.  Such policy and practice is subject to change.  The recipient should contact its legal counsel for legal advice. **For business and professional use only.  Not for consumer distribution.** All loans subject to approval.  Certain conditions and fees apply.  Pacific Union Financial, LLC NMLS #2221.  Equal Housing Opportunity.*

## Information Classification

Confidential Information means:

- Customer Information – Any non-public personal information about a customer, whether in paper, electronic or any other form that is maintained by, or on behalf of, Pacific Union.
- Business Information – Any non-public information about Pacific Union, its respective business operations, customer or prospect lists, pricing information, business plans or business and financial results, including information that others have provided to Pacific Union and Pacific Union has promised to keep confidential.
- Employee Information – Any non-customer information Pacific Union possesses about its employees.  This includes compensation data, performance ratings, health information, benefits information, and other information required to be retained by Human Resources.

Inappropriate disclosure of confidential information can violate privacy regulations and Pacific Union's Privacy Policy. Unauthorized release of confidential information can cause significant harm to consumers, can cause a breach of contract with third parties, provide competitors with a business advantage, and damage the reputation of Pacific Union. Additionally, there may be financial impacts to Pacific Union and/or the individual improperly disclosing information in the form of fines, reparations or civil penalties.

Therefore, all reasonable precautions must be taken to safeguard confidential information as follows:

- Confidential Information may not be disclosed to anyone unless there is reason to believe that the recipient is authorized to receive that information, and has a business need to have access to this information. This disclosure includes to other employees of Pacific Union.
- Confidential information may not be disclosed to any person or entity outside Pacific Union except as necessary or appropriate (i) pursuant to prior written authorization by the person or entity to whom the information pertains (or the legally authorized representative of such person or entity); (ii) to process customers' transactions and administer Pacific Union's products and services including disclosures to vendors pursuant to an agreement to provide products or services to or for Pacific Union, provided the arrangement provides appropriate protections for Confidential Information and provided that the agreement has been approved by Pacific Union's legal counsel; (iii) as required by law or regulation; or (iv) pursuant to the direction of legal counsel.

*This document is limited to current Pacific Union Financial policy and practice and should not be construed as legal advice, legal opinion, or any other advice on specific facts or circumstances.  Such policy and practice is subject to change.  The recipient should contact its legal counsel for legal advice. **For business and professional use only.  Not for consumer distribution.** All loans subject to approval.  Certain conditions and fees apply.  Pacific Union Financial, LLC NMLS #2221.  Equal Housing Opportunity.*

## Additional Policies that support the Information Security Policy

**Acceptable Use of Technology Policy**

**Change management Policy**

**Clean Desk Policy**

**Security Badge Policy**

**Business Continuity Plan**

**Disaster Recovery Plan**

**Encryption Policy**

**Mobile Device and Removable Media Policy**

**Physical Security Policy**

**User Access Management Policy**

**Incident Response**

**Cyber Security Policy**

**IT Asset Management Policy**

**IT Incident Management Policy**

**Password Protection Policy**

**Privacy Breach Policy**

**Record Retention Policy**

**Employee Handbook**

**Vendor Oversight Policy**

*This document is limited to current Pacific Union Financial policy and practice and should not be construed as legal advice, legal opinion, or any other advice on specific facts or circumstances. Such policy and practice is subject to change. The recipient should contact its legal counsel for legal advice. **For business and professional use only. Not for consumer distribution.** All loans subject to approval. Certain conditions and fees apply. Pacific Union Financial, LLC NMLS #2221. Equal Housing Opportunity.*